**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GARRETT M. MILLER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Civil Action No. 09-4176 (SRC)** |
| v. | : | |
| | : | **OPINION** |
| PFIZER, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court on motion for summary judgment by Defendant

Pfizer, Inc. ("Pfizer" or "Defendant") [docket entry 50].  Plaintiff Garrett M. Miller ("Plaintiff")

has opposed the motion.  The Court has opted to rule based on the papers submitted and without

oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons expressed below,

the Court will grant Defendant's motion.


I.    **BACKGROUND**

This action arose out of Plaintiff's termination from employment with Pfizer on August 3,

2007, which he alleges was an act of religious discrimination based on his born-again Christian

beliefs.  Defendant denies the religious discrimination claim and maintains that Plaintiff's

termination came after an exhaustive and thorough investigation into Plaintiff's repeated

inappropriate and offensive comments to his subordinates.

Pfizer, in its commitment to maintain a work environment free from harassment, maintains policies prohibiting any verbal or physical harassment regarding the racial, ethnic, religious, physical or sexual characteristics, or sexual orientation of another.  In particular, these policies prohibit an employee from creating an intimidating, hostile, or offensive working environment, or from unreasonably interfering with an individual's work performance.  Pfizer's Business Conduct and Harassment Policies instruct an employee to report any concerns involving discrimination and/or harassment to either their manager, Human Resources, or the Corporate Compliance Group for investigation.  Individuals determined to have engaged in acts of harassment and/or discrimination can be subject to corrective action that may include termination of employment.  Behavior constituting discrimination and harassment and the internal reporting and disciplining structure are set forth for employees in Pfizer's Business Conduct Policy which all employees receive and have access to throughout their employment.

Plaintiff began work at Pfizer on June 18, 1989 as a Sales Representative.  During his 18 year tenure with the company, Plaintiff received a number of promotions and, as a District Manager in 2007, he maintained supervisory responsibility over a team of approximately 10 representatives.  In or about May 2007, Mary Ann Grommisch ("Grommisch"), a member of Plaintiff's team, complained to John Dalton ("Dalton"), her former District Manager with Pfizer, of inappropriate comments made by Plaintiff to her and other co-workers regarding sexual orientation, race, religion, and gender.  The comments include:

- "I can't believe there are Jews in Paterson" (Def.'s SOF at 10, May 16, 2011);

- "Jehovah's witnesses in Paterson and [whether] they were a cult" (*Id*.);

- He has "no respect for gays and lesbians" (*Id*.);

- He wanted to hire a male for a sales representative position on his team (*Id*.);

- Concerns having mixed race children (*Id*.);

- Concerns regarding having children in an interfaith marriage (*Id*. at 11);

- Advising a female sales representative to "have [her] administrative house in order before having children" (*Id*.);

- Management would not look favorably upon paternity leave (*Id*.); and

- Problems a male might have if he stayed home to raise his children (*Id*.).

After Grommisch spoke with Dalton about these comments, Maura DeLeo, Director of Human Resources, became involved and appointed Kerry Sorvino ("Sorvino"), Director of Employee Relations, to conduct an investigation.  Sorvino promptly interviewed a number of current and former representatives supervised by Plaintiff, many of who confirmed the above-mentioned comments that Plaintiff made to members of the team.  Sorvino interviewed Plaintiff over the telephone on five separate occasions about the remarks attributed to him and Plaintiff admitted making many of the complained of statements.

Following the conclusion of Sorvino's investigation, she recommended that Plaintiff be terminated because his comments "created an uncomfortable workplace for employees and violated Pfizer policies, values, and leader behaviors."  (*Id*. at 15.)  On July 16, 2007, the matter was presented to Pfizer's employee relations panel, comprised of representatives from Pfizer's Human Resources Department.  The panel made a recommendation to Plaintiff's business unit, who was vested with the final decisionmaking authority regarding potential discipline, that Plaintiff be fired.  After discussing the employee relations panel's recommendations and other potential corrective action, Plaintiff's supervisors, James Kamovitch and Bruce Fleischmann,

3

decided to fire Plaintiff because of his "inappropriate and discriminatory remarks; [his] continued failure to recognize the inappropriate and discriminatory nature of his remarks; and [his] failure to show accountability for the [remarks]." (*Id.* at 16.)

As a result, Plaintiff filed the Complaint on June 30, 2009, alleging that Defendant violated the New Jersey Law Against Discrimination ("NJLAD") when it discriminated against Plaintiff based on his religious beliefs by wrongfully terminating him and by implementing compensation policies that are more favorable to non-born-again Christians.[1]  Defendant now moves for summary judgment.

_____

[1]  Plaintiff also raises failure to accommodate and disparate treatment claims under Title VII of the Civil Rights Act of 1964 in his opposition brief.  Defendant, however, correctly notes that while Plaintiff's Complaint is based on his disparate treatment claims, it neglected to mention any failure to accommodate claim or any mention of Title VII.  Only in response to Defendant's motion for summary judgment did Plaintiff first raise claims under Title VII.  However, a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.  *Bell v. City of Philadelphia*, 275 Fed. Appx. 157, 160 (3d Cir. 2008) (holding that, at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)); *see also Trenton v. Scott Paper Co.*, 832 F.2d 806, 810 (3d Cir. 1987) (rejecting a claim the appellants raised for the first time in their motion for summary judgment as outside the scope of the pleadings as well as not a matter of record).

Even if Plaintiff was given the opportunity to incorporate the Title VII claims in his Complaint, the claims would fail since Plaintiff has not exhausted administrative remedies.  The Third Circuit has held:

> [T]he causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits.  A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [] for conciliation or resolution.

*Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).  Plaintiff does not assert prior submission of the failure to accommodate and disparate treatment claims to the EEOC and thus fails to state a valid claim for relief.

## II.   LEGAL ANALYSIS

### A.   Standard of Review

Summary judgment is appropriate under FED. R. CIV. P. 56(a) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must

establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

## B.    Discussion

In his Complaint, Plaintiff alleges he was wrongfully terminated and subject to discriminatory religious practices by Pfizer in violation of the NJLAD. Claims under the NJLAD are evaluated under the framework identified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Reich v. Schering-Plough Corp.*, 399 Fed. Appx. 762, 764 (3d Cir. 2010). *McDonnell Douglas* organizes the burden of production into three parts. First, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *St. Mary's*

*Honor Ctr.*, 509 U.S. 502, 506 (1993).  This creates a presumption of discriminatory intent by the

defendant.  *Id.*  Then, the burden shifts to the defendant-employer to produce evidence that the

adverse employment action was taken "for a legitimate, nondiscriminatory reason."  *Id.* at 507

(quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  By meeting its

burden of production, the employer succeeds in rebutting the presumption favoring plaintiff's

case of religious-based disparate treatment.  *Id.*  The Supreme Court has stressed that the burden

is on the defendant employer to come forward with evidence, not to persuade the jury that its

unlawful discrimination was not the cause of its employment action.  *Id.*  "The ultimate burden of

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

remains at all time with the plaintiff."  *Id.* (quoting *Burdine*, 450 U.S. at 253).  To prevail on his

claim, the plaintiff must demonstrate that the employer's proffered non-discriminatory reason for

the employment decision was not the true reason but rather pretextual.  *Id.*; *see also Stewart*, 120

F.3d at 432.

Under *McDonnell Douglas*, Plaintiff must first establish a prima facie case of religious

discrimination by a preponderance of the evidence which requires proof that (1) plaintiff is a

member of a protected class, (2) plaintiff is qualified for the job at issue, (3) plaintiff suffered an

adverse employment action, and (4) others not within the protected class did not suffer similar

adverse employment actions.  *Kamkar v. Pitney Bowes Corp.*, No. 07-4512, 2008 U.S. Dist.

LEXIS 59029 at *6 (D.N.J. July 25, 2008).   Plaintiff has proffered evidence of the first three

elements: he is a born-again Christian, he was qualified and performing the job prior to

termination, and he was fired from employment.  However, Defendant has met its burden at

summary judgment by pointing to the absence of evidence to support the fourth requirement for a

religious discrimination claim, that similarly situated people not in his protected class were treated better than him.  In response, Plaintiff makes conclusory statements that non-born-again Christians engaged in comparable conduct and were treated more favorably under similar circumstances.  However, Plaintiff neglects to point to a scintilla of evidence to support this proposition and points to nothing in the record that would substantiate his assertions.  Accordingly, Plaintiff's unsupported contentions are insufficient to defeat a motion for summary judgment.

Summary judgment in favor of Defendant also succeeds because of Plaintiff's inability, on the record before the Court, to prove the pretext prong of the *McDonnell Douglas* analysis.  As such, even if this Court were to accept Plaintiff's allegations that others not within the protected class did not suffer adverse employment actions, Plaintiff can nevertheless not prevail on his disparate treatment claim as a matter of law because he has come forward with no evidence that would negate or even cast doubt on Pfizer's legitimate and non-discriminatory reason for terminating his employment.  The Third Circuit has elaborated on what proof of pretext entails:

> The plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the . . . plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence," and hence infer "that the employer did not act for [the asserted] nondiscriminatory reasons."

*Stewart*, 120 F.3d at 432-33 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (alteration in original)).  Pfizer has clearly met its burden of production, pointing to

8

overwhelming evidence that supports its determination that Plaintiff made numerous inappropriate and discriminatory remarks, many of which he acknowledged, and accordingly was discharged from employment in compliance with its Business Conduct and Harassment Policies. The Court stresses that in reviewing the merit of Plaintiff's NJLAD claim, its role is not to consider whether the Defendant employer made a correct decision or to sit in review of the procedures which were invoked pursuant to its Business Conduct and Harassment Policies. The issue before the Court is whether there is evidence in the record which would reasonably permit the jury to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 433. The Court finds that the record is devoid of such evidence of pretext, and as such, Plaintiff could not prevail on his claim that he was terminated because of his religion, in violation of the New Jersey Law Against Discrimination.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment. An appropriate form of Order will be filed.

s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: July 28, 2011

9